## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TEAM SYSTEMS INTERNATIONAL, LLC,<br><br>Debtor. | Chapter 7<br><br>BK Case No. 22-10066-CTG |
| STEVEN M. ACOSTA, JOHN S. MACIOROWSKI, CHRISTOPHER MOTT, and DEBORAH EVANS MOTT,<br><br>Appellants,<br><br>v.<br><br>GEORGE L. MILLER, solely in his capacity as the Chapter 7 Trustee of the estate of Team Systems International, LLC,<br><br>Appellee. | C.A. No. 1:23-cv-01038-GBW |

## ANSWERING BRIEF OF APPELLEE, GEORGE L. MILLER, CHAPTER 7 TRUSTEE OF TEAM SYSTEMS INTERNATIONAL, LLC

David W. Carickhoff (No. 3715)
Bryan J. Hall (No. 6285)
Chipman Brown Cicero & Cole, LLP
Hercules Plaza
1313 N. Market Street, Suite 5400
Wilmington, Delaware 19801
(302) 295-0191
(302) 295-0199 (fax)
carickhoff@chipmanbrown.com
hall@chipmanbrown.com

Adam D. Cole (admitted *pro hac vice*)
Chipman Brown Cicero & Cole, LLP
501 5th Avenue, 15th Floor
New York, New York 10017
(646) 685-8363
cole@chipmanbrown.com

Dated: April 5, 2023

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES......................................................................... iii

STATEMENT OF ISSUES AND STANDARD OF REVIEW ................................1

STATEMENT OF THE CASE ...........................................................................1

SUMMARY OF ARGUMENT...........................................................................5

ARGUMENT ....................................................................................................6

    I.      Appellants Lack Standing to Challenge the Settlement.......................6

    II.     The Settlement Satisfies Rule 9019 and the *Martin* Factors..............11

          A.     Legal Standard Governing Settlements. ...................................11

          B.     The Settlement is Fair, Reasonable, in the Interests of the Estate, And Satisfies the Applicable *Martin* Factors. ..............13

          C.     The Eleventh Circuit Appeal Is Not Likely to Succeed...........18

                  1.     Appellants' unlawful contract argument is undermined by their own Eleventh Circuit Appeal brief. ..................................................................................19

                  2.     Appellants' jurisdiction argument suffers from a fatal lack of credibility. ...................................................20

                  3.     Appellants' arguments that the Judgment Creditors' commission was limited to Niagara bottled water and excluded drop containers were rejected by the jury...........................................................22

                  4.     Appellants cannot challenge the damages amount when they Waived the issue in the Florida Litigation by limiting their argument at trial to liability. ..........................................................................24

                  5.     The Settlement provides the best outcome for the estate. ...........................................................................25

**Page**

6.     The Trustee articulated a reasoned and legitimate business justification for the Settlement........................27

D.     The Settlement Avoids the Costs and Complexity of an Appeal That Is Unlikely to Succeed. ........................................27

E.     The Settlement is in the Best Interests of the Estate and Creditors....................................................................................29

CONCLUSION ..........................................................................................................32

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Aetna Casualty & Surety Co. v. Jasmine, Ltd (In re Jasmine, Ltd)*,
  258 B.R. 119 (D.N.J. 2000)......................................................................12

*In re Combustion Eng'g, Inc.*,
  391 F.3d 190 (3d Cir. 2004)....................................................................1, 7

*In re Dreier LLP*,
  2012 WL 4867376 (Bankr. S.D.N.Y. Oct. 12, 2012) ...............................8

*In re Fryer*,
  235 F. App'x 951 (3d Cir. 2007)...............................................................8

*In re Hawkins*,
  513 B.R. 634 (D. Del. 2013) .....................................................................8

*Lowe's Home Centers, Inc. v. Olin Corp.*,
  313 F.3d 1307 (11th Cir. 2002)...............................................................20

*In re Marvel Entm't Group, Inc.*,
  222 B.R. 243 (D. Del. 1998) ...................................................................11

*Myers v. Martin (In re Martin)*,
  91 F.3d 389 (3d Cir. 1996).............................................................1, 11, 12

*In re Neshaminy Office Bldg. Assocs.*,
  62 B.R. 798 (E.D. Pa. 1986)....................................................................12

*In re NovaPro Holdings, LLC*,
  815 F. App'x 655 (3d Cir. 2020).......................................................11, 12

*In re Nutraquest, Inc.*,
  434 F.3d 639 (3d Cir. 2006).....................................................................12

*In re Paragon Offshore plc*,
  2022 WL 1055574 (3d Cir. Apr. 8, 2022)..................................................6

*In re Prospector Offshore Drilling S.a R.L.*,
  2019 WL 1150563 (D. Del. Mar. 12, 2019) ....................................6, 7, 10

**Page(s)**

*In re Redf Mktg., LLC,*
    536 B.R. 646 (Bankr. W.D.N.C. 2015)....................................................8

*In re Remsen Partners, Ltd.,*
    294 B.R. 557 (Bankr. S.D.N.Y. 2003) ................................................10

*In re Revstone Indus. LLC,*
    690 F. App'x 88 (3d Cir. 2017)............................................................7

*In re RFE Indus., Inc.,*
    283 F.3d 159 (3d Cir. 2002)................................................................10

*In re S. Indus. Banking Corp.,*
    66 B.R. 349 (Bankr. E.D. Tenn. 1986) ................................................8

*In re Team Sys. Int'l, LLC,*
    2024 WL 386823 (Bankr. D. Del. Feb. 1, 2024)..........................8, 14

*Thurmond v. Bayer Healthcare Pharms., Inc.,*
    649 F. App'x 1003 (11th Cir. 2016).....................................................20

*Tracy v. Fla. Atl. Univ. Bd. of Trustees,*
    980 F.3d 799 (11th Cir. 2020).............................................................23

*Travelers Ins. Co. v. U.K. Porter Co.,*
    45 F.3d 737 (3d Cir. 1995)......................................................... 1, 7, 9

**Statutes and Rules**

U.S. Const. amend. VII .............................................................................23

11 U.S.C. § 726 ..........................................................................................7

6 Del. C. § 18-402 ....................................................................................15

Fed. R. Bankr. P. 2002 ..............................................................................10

Fed. R. Bankr. P. 9019...............................................................................11

George L. Miller, solely in his capacity as the chapter 7 trustee ("Trustee") of the estate of Team Systems International, LLC ("Debtor"), submits this Answering Brief to the Opening Brief [D.I. 12] ("Op. Br.") filed by Deborah Evans Mott, Steven M. Acosta, Christopher Mott, and John S. Maciorowski (collectively, "Appellants").

## STATEMENT OF ISSUES AND STANDARD OF REVIEW

1.     Whether Appellants have prudential standing to appeal the Settlement Order when Appellants have failed to show any direct and adverse pecuniary effect on them, as required under *In re Combustion Eng'g, Inc*., 391 F.3d 190, 214 (3d Cir. 2004) and *Travelers Ins. Co. v. U.K. Porter Co*., 45 F.3d 737, 741 (3d Cir. 1995).

2.     Whether the Bankruptcy Court abused its discretion in approving the Trustee's Settlement with the Judgment Creditors as fair, reasonable, and in the interests of the estate and in finding that the Settlement satisfied the applicable factors under *Myers v. Martin (In re Martin)*, 91 F.3d 389, 391 (3d Cir. 1996).

## STATEMENT OF THE CASE

The Debtor's bankruptcy case was preceded by a highly contentious, three-year litigation filed against the Debtor by its largest creditors in the United States District Court for the Northern District of Florida (the "Florida Litigation" and the "Florida District Court").  *See* TSI 11th Cir. Br. at 9 (A000193).[1]

---

[1] References to "A_____" are to the Appendices filed with Appellants' Opening Brief at D.I. 13. References to "T____" are to the Trustee's Appendix filed contemporaneously with this Answering Brief.

The Debtor, which had operated as a government contractor, sought to bid on a contract to procure bottled water for the U.S. Federal Emergency Management Agency ("FEMA").  *See id.* at 5 (A000189).  The Debtor enlisted the help of certain third parties, including GPDEV, LLC and Simons Exploration, Inc. (together, the "Judgment Creditors").  *See id.* at 5-6 (A000189-A000190).

The Appellants here, the Managers and/or members of the Debtor, caused the Debtor to enter into a *Consulting Agreement* with the Judgment Creditors, which provided, in relevant part, that the Judgment Creditors were entitled to 25% of the "Net Income" from the Debtor's supply of bottled water.  *See id.* at 7 (A000191); *see also* Memo. Op. at 6-7, *In re Team Sys. Int'l, LLC*, 22-10066-CTG [D.I. 146] (Bankr. D. Del. Mar. 30, 2022) (T0006-T0007).

The Debtor obtained a lucrative contract with FEMA and, ultimately, FEMA paid the Debtor more than $37 million for procuring bottled water for delivery to Puerto Rico in response to Hurricane Maria.  *See* Tr. of Jury Trial – Day 2 at 315:16-24, *GPDEV, LLC et al. v. Team Sys. Int'l, LLC*, No. 18-cv-442 (N.D. Fla. Aug. 24, 2021) (A000399).

In September 2018, the Judgment Creditors sued the Debtor for allegedly underpaying them.  *See* TSI 11th Cir. Br. at 9 (A000193).  As discussed more fully below, during the Florida Litigation, there were multiple allegations of misconduct made against the Debtor's representatives.  *See infra* Section II.B.

In August 2021, the Florida Litigation was tried to a jury and the Judgment Creditors prevailed. *See Order for Entry of Judgment* at 3-4, *GPDEV, LLC, et al. v. Team Sys. Int'l, LLC*, 18-cv-442 (N.D. Fla. Sept. 28, 2021) (A002460-A002461). The Florida District Court entered judgments in favor of the Judgment Creditors totaling more than $6.2 million. *See Judgment, GPDEV, LLC, et al. v. Team Sys. Int'l,*, 18-cv-442 (N.D. Fla. Sept. 28, 2021) (A002469-A002470).

The Debtor appealed to the United States Court of Ap peals for the Eleventh Circuit (the "Eleventh Circuit Appeal") but the Appellants, as Managers and/or members of the Debtor, failed to cause the Debtor to post a bond or obtain a stay pending appeal. *See* Hr'g Tr. 77:8-12 (Sept. 20, 2023) (A000803).[2]

The Judgment Creditors commenced judgment enforcement and, in response, on January 18, 2022, Appellants, as Managers and/or members of the Debtor, caused the Debtor to file a voluntary bankruptcy case under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court"). *See Motion of the Chapter 7 Trustee for Entry of an Order Pursuant to Fed. R. Bankr. P. 9019 Authorizing and Approving the Settlement Agreement Between the Trustee and the Judgment Creditors* ¶ 3 (Bankr. D.I. 335) (the "Settlement Motion") (A000002).

---

[2] References herein to "Hr'g Tr." are to the transcript of the hearing conducted by the Bankruptcy Court on September 20, 2023 on, among other things, the Settlement Motion (A000761-A000833).

Two months later, on March 31, 2022, the Bankruptcy Court converted the Debtor's bankruptcy case to a case under chapter 7 of the Bankruptcy Code. *See id.* ¶ 4 (A000002). Also on March 31, 2022, the Trustee was appointed as the Chapter 7 Trustee of the Debtor's estate. *See id.* ¶ 5 (A000002).

Following his appointment, the Trustee investigated the Judgment Creditors' claims, the Florida Litigation, and the Eleventh Circuit Appeal. *See id.* ¶ 20 (A000006). The Trustee initially viewed the Eleventh Circuit Appeal as having some merit but, after further analysis and investigation, determined that none of the arguments was likely to succeed. *See* Hr'g Tr. 38:4-21 (A000764).

Moreover, the Trustee determined that substantially all electronic records were destroyed and a substantial amount of the documents were altered, prior to the Trustee's receipt of the evidence. *See* Hr'g Tr. 42:11-20, 43:17-22, 81:11-18 (A000768, A000769, A000807); Settlement Motion ¶ 24 (A000008-A000009). Appellants deny culpability in the acts, although the electronic records and documents were in their possession. *See id.* The Trustee believes credible evidence would be required to prosecute the Eleventh Circuit Appeal and to be successful in prosecuting the litigation. *See id.*

On July 21, 2023, the Trustee filed the Settlement Motion. *See* Settlement Motion (A000001-A000021). Among other things, the Settlement reduced the Judgment Creditors' claims against the Debtor by more than $619,000. *See id.*

4

¶ 11(b) (A000003). The Settlement also avoided the delay, risks, and costs of further litigation with the Judgment Creditors, which the Trustee estimated would cost between $500,000 and $1 million—funds the Debtor's estate does not have. *See* Hr'g Tr. 44:24-45:3, 46:4-9 (A000770-A000772). Appellants preliminarily offered approximately $30,000 for these costs but refused to finalize any offer. *See* Hr'g Tr. 66:22-68:6 (A000792-A000794).

On September 20, 2023, the Bankruptcy Court conducted a hearing on the Settlement Motion. *See* Hr'g Tr. 35-107 (A000761-A000833). Following that hearing, the Bankruptcy Court entered the *Order Granting the Motion of the Chapter 7 Trustee for Entry of an Order Pursuant to Fed. R. Bankr. P. 9019 Authorizing and Approving the Settlement Agreement Between the Trustee and the Judgment Creditors* [Bankr. D.I. 367] (the "Settlement Order") (A003227-A003228).

## SUMMARY OF ARGUMENT

This Court should dismiss Appellants' appeal or, alternatively, affirm the Settlement Order.

Appellants lack standing to challenge the Settlement Order. Appellants are equity holders, not creditors, of the Debtor. Appellants have failed to show any direct and adverse pecuniary effect on them and, instead, point to potential harm incident to the Settlement Order, which is insufficient for appellate standing. Short of appellate standing, the Appeal should be dismissed.

The record demonstrates that the Trustee's Settlement with the Judgment Creditors was the product of the Trustee's informed, reasoned judgment; it is fair, reasonable and in the interests of the estate; and it satisfies the *Martin* factors. In approving the Settlement, the Bankruptcy Court considered, and rejected, each of the arguments raised in the Eleventh Circuit Appeal and raised by Appellants here, because none of those arguments is likely to succeed.

The Settlement reduces the Judgment Creditors' claims by more than $619,000, while avoiding the delays and costs of the pursuing the Eleventh Circuit Appeal, which are estimated to be between $500,000 and $1 million—all for the benefit of the Debtor's estate and creditors, none of whom opposed the Settlement.

Appellants have not identified any legal or factual error or any abuse of discretion by the Bankruptcy Court. The Settlement Order should be affirmed by this Court.

## **ARGUMENT**

### I. **Appellants Lack Standing to Challenge the Settlement.**

Only "'persons aggrieved' by an order of the Bankruptcy Court" have standing to appeal from such an order. *In re Prospector Offshore Drilling S.a R.L.*, No. 18-367-LPS, 2019 WL 1150563, at *6 (D. Del. Mar. 12, 2019), *aff'd sub nom. In re Paragon Offshore plc,* No. 19-1627, 2022 WL 1055574 (3d Cir. Apr. 8, 2022) (holding an out-of-the-money equity holder lacked standing to appeal a bankruptcy

6

court order approving a settlement modifying the chapter 11 confirmation order) (*citing In re Revstone Indus. LLC*, 690 F. App'x 88, 89 (3d Cir. 2017) and *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 214 (3d Cir. 2004)).

The "persons aggrieved" test "exists as a prudential standing requirement that limits bankruptcy appeals to persons whose rights or interests are <u>directly and adversely affected pecuniarily</u> by an order or decree of the bankruptcy court." *Id.* (quoting *Combustion*, 391 F.3d at 214) (emphasis added). The "persons aggrieved" test is "more restrictive" than Article III standing because of the "particularly acute need to limit appeals in bankruptcy proceedings, which often involve a myriad of parties . . . indirectly affected by every bankruptcy court order." *Travelers Ins. Co. v. U.K. Porter Co.*, 45 F.3d 737, 741 (3d Cir. 1995) (holding insurers lacked appellate standing where "even though they may be exposed to some potential harm incident to the bankruptcy court's order, [they] are not directly affected by that order.").

The Trustee's Settlement with the Judgment Creditors reduced their claims against the Debtor's estate by $619,000 and allowed the reduced claims. The only parties "directly and adversely affected pecuniarily" by the allowance of such claims in the Debtor's chapter 7 bankruptcy are the Debtor's other creditors, <u>none of whom objected to the Settlement</u>. *See* 11 U.S.C. § 726(a)(2) (providing equal treatment for all similarly situated allowed unsecured claims against an estate); *see also* 11 U.S.C. § 726(a)(6) (treating equity interests as subordinate to creditor claims).

Appellants are <u>not</u> creditors of the Debtor. In their Opening Brief, Appellants argue they are creditors because they were sued by the Trustee. Op. Br. at 14. This argument has no legal support and has been rejected by courts, including by the Bankruptcy Court in this case.[3] Indeed, the Bankruptcy Court gave Appellants the opportunity to show they were creditors, and Appellants failed to make any such showing. *See In re Team Sys. Int'l, LLC*, No. 22-10066, 2024 WL 386823, at *3 (Bankr. D. Del. Feb. 1, 2024) ("The objecting defendants (despite being given every opportunity to offer a theory) have made no suggestion that there is any circumstance in which they would hold a claim against the debtor.").

Appellants also are not creditors because they failed to file proofs of claim, even though Appellants have had more than two years' notice of the conversion of the Debtor's case to chapter 7, and even though Appellants were sued by the Trustee 15 months ago. *See In re Fryer*, 235 F. App'x 951, 954 (3d Cir. 2007) (appellant that failed to file proof of claim was not creditor and lacked standing); *In re Hawkins*, 513 B.R. 634, 638 (D. Del. 2013), *aff'd*, 594 F. App'x 71 (3d Cir. 2015) (same).

---

[3] *In re Team Sys. Int'l, LLC*, No. 22-10066, 2024 WL 386823, at *3 (Bankr. D. Del. Feb. 1, 2024) ("Because the objecting defendants are being sued for a fraudulent conveyance, with the trustee's claim to recover the allegedly fraudulent conveyance arising under § 550, the objecting defendants assert that § 502(h) renders them creditors. But that is wrong. Section 502(h) does not create a claim, it merely addresses when a claim that might come into being as a result of the trustee's recovery of property would arise."); *see also*, *e.g.*, *In re Redf Mktg., LLC*, 536 B.R. 646, 655 (Bankr. W.D.N.C. 2015); *In re Dreier LLP*, 2012 WL 4867376, at *3 (Bankr. S.D.N.Y. Oct. 12, 2012); *In re S. Indus. Banking Corp.*, 66 B.R. 349, 361 (Bankr. E.D. Tenn. 1986).

Appellants argue the Settlement "greatly affects their individual economic and other rights." Op. Br. at 12. However, Appellants only point to "potential harm," which is insufficient to establish appellate standing. *Travelers*, 45 F.3d at 741. Appellants argue the estate is solvent by relying on a claim for money the Debtor filed against FEMA. Op. Br. at 13-14. However, that claim was <u>denied twice</u>, first by FEMA and then by the U.S. Civilian Board of Contract Appeals, and it is currently being litigated at the U.S. Court of Appeals for the Federal Circuit.[4] Any potential recovery is both contingent and speculative at this time. Appellants also refer to potential future "fuel fulfillment contracts." Op. Br. 13. However, the Debtor's case was converted to a chapter 7 liquidation more than two years ago and the Debtor has not operated since then. *See*, *e.g.*, Memo. Op., *In re Team Sys. Int'l, LLC*, 22-10066-CTG [D.I. 146] (Bankr. D. Del. Mar. 30, 2022) (ordering conversion to chapter 7). Further, the alleged "fuel fulfillment contracts" are one piece of evidence that Appellants failed to substantiate during the bankruptcy case. *See id.* at 38-39 (T0038-T0039); *see also* Hr'g Tr. 51:9-13 (A000777).

---

[4] *See Team Sys. Int'l, LLC v. Sec. of Dep't of Homeland Sec.*, 23-1556 (Fed. Cir.). In their Opening Brief, Appellants make the unsupported assertion that, in or about June 2023, FEMA "was preparing to pay the Debtor on a claim worth approximately $13.5 million." Op. Br. at 8. Tellingly, in the nine months since then, <u>FEMA has made no attempt to pay any money to the Debtor</u> and FEMA continues to vigorously litigate the Debtor's claim at the Federal Circuit. *See id.*

The decisions cited by Appellants in support of their standing argument are readily distinguishable.  In *Remsen Partners*, the party challenging the settlement was a law firm retained during the chapter 11 case and, therefore, was a chapter 11 administrative creditor, not an equity holder, like Appellants here.  *See In re Remsen Partners, Ltd.*, 294 B.R. 557, 562, 571 (Bankr. S.D.N.Y. 2003).  And, in *RFE Industries*, the Third Circuit held that a chapter 11 debtor had standing to object to a settlement in a case where the debtor's creditors had already been paid "in full."  *In re RFE Indus., Inc.*, 283 F.3d 159, 162 (3d Cir. 2002).  Here, creditors have not been paid in full—there are millions of dollars of unpaid claims, as reflected on the claims register on the Bankruptcy Court's CM/ECF docket.

Lastly, there is no merit to Appellants' assertion that the Trustee "acknowledged" their standing by serving them with a copy of the Settlement Motion.  Op. Br. at 15.  Appellants have appeared in the bankruptcy case, so they are routinely served with motions.  *See* Fed. R. Bankr. P. 2002.  Notice does not equate to standing.  Regardless of whether Appellants *might* have had standing to object to the Settlement Motion before the Bankruptcy Court, Appellants are required to establish that they have prudential standing before this Court to pursue this appeal. *See Prospector Offshore Drilling*, 2019 WL 1150563, at *6 (rejecting equity holders' argument that, because they had standing before the bankruptcy court, they also had appellate standing).  Appellants have made no such showing.

10

Appellants have failed to show they are directly and adversely affected pecuniarily by the Settlement Order.  This appeal should be dismissed.

## II.    The Settlement Satisfies Rule 9019 and the *Martin* Factors.

### A.    Legal Standard Governing Settlements.

Settlements are a favored means of resolving disputes in bankruptcy.  *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).  "Indeed, it is an unusual case in which there is not some litigation that is settled between the representative of the estate and an adverse party."  *Id.*

Bankruptcy Rule 9019 provides that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).  In considering a compromise or settlement under Rule 9019, a court should determine whether the compromise is fair, reasonable, and in the interests of the estate.  *In re Marvel Entm't Group, Inc*., 222 B.R. 243, 249 (D. Del. 1998).

In making this determination, the United States Court of Appeals for the Third Circuit has recognized "four criteria that a bankruptcy court should consider in striking this balance: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."  *Martin*, 91 F.3d 393; *see, e.g.*, *In re NovaPro Holdings,*

11

*LLC*, 815 F. App'x 655, 657 (3d Cir. 2020) (applying *Martin* factors); *In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006) (holding the *Martin* test applies to settlements of claims against the debtor).

When applying the *Martin* factors, a court "is not supposed to have a 'mini-trial' on the merits, but should canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness." *Aetna Casualty & Surety Co. v. Jasmine, Ltd (In re Jasmine, Ltd)*, 258 B.R. 119, 123 (D.N.J. 2000) (internal quotations omitted). Court generally defer to the trustee's judgment in entering into a settlement "so long as there is a legitimate business justification" for doing so. *Martin*, 91 F.3d at 395.

The decision whether to approve a settlement lies within the sound discretion of the court. *In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986). On appeal, a decision to approve a settlement is reviewed for abuse of discretion. *NovaPro*, 815 F. App'x at 657 n.6 ("We apply the same standard as the District Court and review the approval of a settlement for an abuse of discretion."); *Nutraquest*, 434 F.3d at 645 ("[F]or us to find an abuse of discretion the District Court's decision must rest on a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact."); *Martin*, 91 F.3d at 391 (applying abuse of discretion standard).

**B.    The Settlement is Fair, Reasonable, in the Interests of the Estate, And Satisfies the Applicable *Martin* Factors.**

The Trustee articulated a reasonable and legitimate business justification for entering into the Settlement.

The record below establishes that the Trustee investigated the Judgment Creditors' claims, the Florida Litigation, and the Eleventh Circuit Appeal.  *See* Settlement Motion ¶ 20 (A000006); Hr'g Tr. 38-51 (A000764-A000777) (testimony of the Trustee).  Among other things, following his appointment, the Trustee filed objections to the proofs of claim filed by the Judgment Creditors, but the Bankruptcy Court issued a decision overruling those objections.  *See* Settlement Motion ¶ 9 (A000003).

Later, the Trustee and the Judgment Creditors engaged in extensive arm's length negotiations, the result of which was the Settlement.  *See* Settlement Motion ¶ 20 (A000006); Hr'g Tr. 44, 64-65 (A000770, A000790-A000791).  Among other things, the Settlement reduced the Judgment Creditors' claims by approximately $619,000.  *See* Settlement Motion ¶ 11(b) (A000003); Hr'g Tr. 44-45 (A000770-A000771).  The Settlement also avoided the costs and delay of protracted litigation over the Eleventh Circuit Appeal and potentially a new trial on the merits.  *See* Settlement Motion ¶ 20 (A000006); Hr'g Tr. 46-47 (A000772-A000773).  Such costs are estimated to be between $500,000 and $1 million.  *See* Hr'g Tr. 46:4-9 (A000772).

The Debtor's estate does not have the resources to litigate the Eleventh Circuit Appeal. *See* Hr'g Tr. 44-46 (A000770-A000772). Although Appellants argue that they offered some money, their offer was never formalized and was insufficient to fund the Eleventh Circuit Appeal and associated litigation. *See* Hr'g Tr. 46-47 (A000772-A000773). Further, Appellants are subject to a preliminary injunction order issued by the Bankruptcy Court that prohibits Appellants from using cash except for "ordinary course expenditures." Memo. Op. at 34, *In re Team Sys. Int'l, LLC*, No. 22-10066-CTG) (Bankr. D. Del. Jan. 31, 2023) (T0078). Pursuing an appeal that is unlikely to prevail is not an ordinary course expenditure.

The Debtor's estate also lacks credible witnesses. *See* Settlement Motion ¶ 22 ("As a threshold matter, the Debtor appears to have had credibility issues throughout the Florida litigation, including with respect to the reliability of its documents.") (A000007). During the Florida Litigation, there were multiple missteps, or outright misconduct, by the Appellants or their agents, including without limitation the following:

- The Debtor sought to dismiss the Florida Litigation based upon a lack of diversity jurisdiction, but the Florida District Court found that "[i]t is more likely than not that the document" relied upon by the Debtor to contest diversity jurisdiction "was created after the jurisdictional issue arose and is not authentic." *Order Denying the Motions to Dismiss and Transfer* at 4-5, *GPDEV, LLC, et al. v. Team Sys. Int'l, LLC*, 18-cv-442 (Doc. 58) (N.D. Fla. May 8, 2021) (A001516-A001517);

- During the Florida Litigation, the Debtor was sanctioned for discovery abuses. *See, e.g., Order Compelling Document Production and*

14

*Awarding Attorney's Fees* at 4-5, *GPDEV, LLC, et al. v. Team Sys. Int'l, LLC*, 18-cv-442 (Doc. 133) (N.D. Fla. Apr. 9, 2020) (stating "[t]he [Debtor] unilaterally chose not to produce documents" and its "position was not substantially justified.") (T0083-T0084); *see also*, *e.g.*, *Order Addressing Late Production and Incomplete Document Production* at 3, *GPDEV, LLC, et al. v. Team Sys. Int'l, LLC*, 18-cv-442 (Doc. 243) (N.D. Fla. May 8, 2021) (T0089) (stating the Debtor had produced documents that it "had said earlier did not exist" and noting that the Judgment Creditors had "made a strong showing that something was amiss.");[5]

- At trial, the Debtor made the "strategic decision" not to even contest the Judgment Creditors' expert's calculation of damages. *Id*. at 3-4 (T0089-T0090); and

- To avoid having its expert impeached on cross, the Debtor decided not to even call the expert at trial. Tr. of Jury Trial – Day 3 at 536:1-6, *GPDEV, LLC, et al. v. Team Sys. Int'l, LLC*, 18-cv-442 (N.D. Fla. Aug. 25, 2021) (Doc. 307) (A003012).

All of the foregoing occurred while <u>Appellants</u>, the Debtor's former Managers and/or members, were in charge of the Debtor's affairs, including its defense of the Florida Litigation. *See* Memo. Op. at 5, 19, *In re Team Sys. Int'l, LLC*, 22-10066-CTG [D.I. 146] (Bankr. D. Del. Mar. 30, 2022) (T0005, T0019); *see also* 6 Del. C. § 18-402.

The lack of credible witnesses came into even sharper focus during the course of the Debtor's bankruptcy case. *See, e.g.*, Memo. Op. at 29, 36, *In re Team Sys. Int'l, LLC,* No. 22-10066-CTG (D.I. 146) (Bankr. D. Del. Mar. 30, 2022) (T0029, T0036) (describing testimony by Appellant Deborah Evans Mott as "not credible"

---

[5] These orders of the Florida District Court are referenced on pages 25 and 36 of the Docket Sheet of the Florida Litigation submitted by Appellants (A001200, A001211).

and observing that Debtor's counsel needed to "correct" testimony by Appellant Steven M. Acosta); *see also* Memo. Op. at 12-17, 26-32, *In re Team Sys. Int'l, LLC,* No. 22-10066-CTG (D.I. 304) (Bankr. D. Del. Jan. 31, 2023) (T0056-T0061, T0070-T0076) (discussing evidence uncovered by the Trustee of concealed transfers to Appellants and granting the Trustee a preliminary injunction).

In addition to a lack of credible witnesses, the Trustee does not have a complete set of the Debtor's books and record with which to pursue the Eleventh Circuit Appeal. *See*, *e.g.*, Settlement Motion ¶ 24 (A000008-A000009); Hr'g Tr. at 42-43; 65-66 (A000768-A000769; A000791-A000792).

These are significant risks and impairments to pursuing the Eleventh Circuit Appeal, which the Settlement avoids.

Having considered the foregoing, the Trustee determined in the reasonable exercise of his business judgment to enter into the Settlement with the Judgment Creditors. *See* Settlement Motion ¶¶ 19-28 (A000006-A000009); Hr'g Tr. 38-51 (A000764-A000777).

The Settlement Motion was served on notice to the Office of the United States Trustee, all creditors that filed claims, and all parties that have appeared in the case, including Appellants. *See* Settlement Motion ¶ 29 (A000009). No creditor objected to the Settlement; the only objection came from Appellants (A000027).

The Bankruptcy Court conducted a hearing on the Settlement Motion and received testimony from the Trustee and other evidence in support of the Settlement. *See generally* Hr'g Tr. 35-107 (A000761-A000833). The Trustee testified at length in support of the Settlement and was subject to cross-examination by Appellants' counsel. *See* Hr'g Tr. 36-77 (A000764-A000803). Appellants chose not to present any witnesses of their own at the hearing. *See* Hr'g Tr. 78:3-6 (A000804).[6]

The Bankruptcy Court heard and considered the arguments made by the Trustee and by Appellants. *See* Hr'g Tr. 78-91 (A000804-A000817). At the conclusion of the September 20, 2023 hearing, the Bankruptcy Court made an oral ruling approving the Settlement. *See* Hr'g Tr. 99:15-105:23 (A000825-A000831). In particular, the Bankruptcy Court stated:

> I'm satisfied that the [T]rustee's decision to accept the [S]ettlement is the reasoned exercise of the [T]rustee's judgment after having appropriately informed himself of the risks and opportunities presented by the possibility of the [Eleventh Circuit A]ppeal; and that, applying the *Martin* factors, I'm satisfied that the [S]ettlement is within the range of reasonable[ness] on the record as it exists before me.

Hr'g Tr. 99:19-100:1 (A000825-A000826).

---

[6] On page 1 of their Opening Brief, Appellants ask this Court to "order discovery related to the Proposed Settlement." Op. Br. 1. However, Appellants waived any right to request discovery by failing to take discovery on the Settlement Motion and by participating in the hearing on the Settlement Motion without having taken discovery.

Appellants argue there is no rational basis for the Settlement. Op. Br. 1.[7] But, Appellants do not meaningfully engage with the record, which amply demonstrates that the Settlement was the product of the sound exercise of the Trustee's business judgment. *See generally* Settlement Motion (A000001-A000010); Hr'g Tr. (A000761-A000833). Appellants also argue that the Trustee "rushed" into the Settlement, but this assertion is undermined by the fact that the Trustee undertook a detailed investigation and entered into the Settlement 15 months after his appointment. *See* Settlement Motion ¶¶ 3-28 (A000002-A000009); Hr'g Tr. 36-51 (A000762-A000777). Contrary to Appellants' bald assertions, the record establishes that the Settlement represents a "reasoned exercise of the [T]rustee's judgment after having appropriately informed himself of the risks and opportunities" of the Eleventh Circuit Appeal. Hr'g Tr. at 99:20-23 (A000825).

## C.     The Eleventh Circuit Appeal Is Not Likely to Succeed.

Appellants argue that there are multiple grounds to overturn the Judgment Creditors' judgments. However, the Bankruptcy Court carefully considered each of the arguments raised in the Eleventh Circuit Appeal and found none of the arguments was likely to succeed. *See* Hr'g Tr. 102:12-104:15 (A000828-A000830).

---

[7] Appellants assert there is no "compelling bankruptcy or non-bankruptcy reason" to enter into the Settlement. Op. Br. 3. That is a fictitious standard with no basis in law. The actual standard for approval of the Settlement is set forth above. Further, the Trustee has identified rational—indeed compelling—business justifications for entering into the Settlement, which Appellants have failed to meaningfully address.

## 1. Appellants' unlawful contract argument is undermined by their own Eleventh Circuit Appeal brief.

Appellants argue the Eleventh Circuit Appeal will be successful because, in their view, the Debtor's agreement with the Judgment Creditors was "illegal under federal law" because it provides for a "contingency percentage commission . . . ." Op. Br. at 17. However, as the Bankruptcy Court observed, this argument is undermined by <u>Appellants' own appeal brief</u> filed in the Eleventh Circuit Appeal, which states that the Debtor "rejected substantial portions" of the Judgment Creditors' draft agreement, including language that contemplated such a commission. *See* Hr'g Tr. 102:24-103:4 (A000828-A000829); TSI 11th Cir. Br. at 6 (A000190) ("TSI rejected substantial portions of Plaintiffs' draft, including the language contemplating a commission 'for assistance in procuring the [FEMA] contract(s).'") (internal citation omitted); Demonstrative Comparison (redline of the Debtor's agreement with the Judgment Creditors) (A002443-A002446). The record, therefore, shows Appellants played an active role in drafting the agreement (and reaped substantial benefits from it). Appellants' prior conduct and the arguments they made in the Eleventh Circuit Appeal opening brief undermine their position here that the agreement can be challenged as unlawful.

Moreover, Appellants admit in their Opening Brief the affirmative defense that the agreement was unlawful <u>was not raised until trial</u>, and the Florida District Court's decision not to allow Appellants to spring this new argument at trial would

be reviewed for an abuse of discretion. *See, e.g., Thurmond v. Bayer Healthcare Pharms., Inc.*, 649 F. App'x 1003, 1005 (11th Cir. 2016) (citing abuse of discretion standard and stating, "it is not an abuse of discretion for a district court to deny a motion for leave to amend following the close of discovery, past the deadline for amendments and past the deadline for filing dispositive motions.") (quoting *Lowe's Home Centers, Inc. v. Olin Corp.*, 313 F.3d 1307, 1315 (11th Cir. 2002)). Appellants have not offered any argument that the Florida District Court abused its discretion in denying their request to amend an affirmative defense at trial. As the Bankruptcy Court concluded, "the likelihood of success" of this argument is "low." Hr'g Tr. 103:4 (A000829).

Appellants spend pages of their Opening Brief discussing their illegal contract theory. Op. Br. at 17-22. However, Appellants do not point to anything in the record of the Florida Litigation that shows the jury relied upon an unlawful interpretation of the agreement in rendering a verdict for the Judgment Creditors. *See generally* Op. Br. Thus, even if Appellants had timely raised the argument, there is no basis to believe it would have changed the outcome in the Florida Litigation.

## 2. Appellants' jurisdiction argument suffers from a fatal lack of credibility.

Appellants argue the Florida District Court lacked diversity jurisdiction. Op. Br. at 23-24. However, the Florida District Court found "[i]t is more likely than not that the document" relied upon by the Debtor to contest diversity jurisdiction "was

created after the jurisdictional issue arose and is not authentic." *Order Denying the Motions to Dismiss and Transfer* at 4-5, *GPDEV, LLC, et al. v. Team Sys. Int'l, LLC*, No. 18-cv-442 (Doc. 58) (N.D. Fla. May 8, 2021) (A001516-A001517). The Bankruptcy Court observed that this "credibility assessment . . . would face a very high bar on appeal and is highly unlikely to be overturned." Hr'g Tr. 102:21-23 (A000828).

Further, the deposition testimony of Appellant Steven Acosta during the Florida Litigation regarding when he became a member of the Debtor raises additional credibility concerns that further undermine any appeal based upon an alleged lack of jurisdiction. *See* Tr. of Depo. of Steven Acosta (Jan. 31, 2019) (A001324-A001408).

In their Opening Brief, Appellants selectively quote from the Florida Litigation transcript in an attempt to make it appear as if the Florida District Court had doubts about its jurisdiction ruling. Op. Br. at 24 ("Aware of this duty, the Florida District Court acknowledged, based on the points outlined and summarized above, that 'there is at least a significant possibility that the Eleventh Circuit will say I got it wrong; there's no federal jurisdiction.'" TSI 11th Cir. Br. Appx. (Fla. Dkt., ECF 57 at 18) (A001498)."). That is not accurate. In fact, the Florida District Court made that statement in the context of a question posed to the Judgment Creditors' counsel, not as a concession, as Appellants imply. *Compare* Tr. of Motion Hearing

at 18 *GPDEV, LLC, et al. v. Team Sys. Int'l, LLC*, No. 18-cv-442 (N.D. Fla. Mar. 7, 2019) (A0001498), *with id.* at 25-26 (A0001505-A001506) (stating, among other things, "[t]he greater weight of the evidence is that that Resolution was not prepared prior to the filing of this lawsuit.  That's an inference I draw from the form of the document, from the entire record.").

Appellants challenged the Florida District Court's diversity jurisdiction based upon non-credible testimony and a document that the court found, more likely than not, to be fraudulent.  No appeal is likely to succeed on such a record.

> **3.    Appellants' arguments that the Judgment Creditors' commission was limited to Niagara bottled water and excluded drop containers were rejected by the jury.**

Appellants argue the Eleventh Circuit Appeal should be pursued because the Judgment Creditors were limited to commissions on bottled water from Niagara only and not other bottled water or the drop containers in which the water was shipped.  Op. Br. 25-30 (§ III.A.1.c and d).  However, these factual issues were litigated in the Florida Litigation and argued to a jury.  *See Order for Entry of Judgment* at 3-4, *GPDEV, LLC, et al. v. Team Sys. Int'l, LLC*, 18-cv-442 (N.D. Fla. Sept. 28, 2021) (A002459-A002460).  The jury rejected Appellants' argument and found that the scope of the Debtor's agreement with the Judgment Creditors included bottled water other than Niagara and included the shipping containers.  *See id.*  Appellants do not even attempt to show that the jury's findings regarding these matters were "against

the great . . . weight of the evidence." *Tracy v. Fla. Atl. Univ. Bd. of Trustees*, 980

F.3d 799, 811 (11th Cir. 2020) ("Because it is critical that a judge does not merely

substitute his judgment for that of the jury, new trials should not be granted on

evidentiary grounds unless, at a minimum, the verdict is against the great—not

merely the greater—weight of the evidence.") (internal citation and quotations

omitted); *see* U.S. Const. amend. VII (". . . no fact tried by a jury, shall be otherwise

reexamined in any court of the United States, than according to the rules of the

common law.").

Appellants attempt to use their Opening Brief here to relitigate the arguments

they made in the Florida Litigation that the Debtor's agreement with the Judgment

Creditors was "unambiguous." Op. Br. at 25-28. However, the Florida District

Court found that the agreement was not only ambiguous, but was "astonishingly

cryptic." *Order for Entry of Judgment* at 2, *GPDEV, LLC, et al. v. Team Sys. Int'l,*

*LLC*, 18-cv-442 (N.D. Fla. Sept. 28, 2021) (A002459).

The Bankruptcy Court properly considered all of the arguments raised by

Appellants. *See* Hr'g Tr. 85-105 (A000810-A000831). Having considered

Appellants' arguments, the Bankruptcy Court properly concluded that "the

probability of reversing the District Court's findings, as well as the jury's verdict on

those grounds, is, again, exceedingly low." Hr'g Tr. 103:9-12 (A000829). Thus,

Appellants' contract-based arguments do not support reversal of the Bankruptcy Court's decision to approve the Settlement.

> **4.      Appellants Cannot Challenge the Damages Amount When They Waived the Issue in the Florida Litigation By Limiting Their Argument at Trial to Liability.**

In their Opening Brief, Appellants claim the damage amounts awarded in the Florida Litigation erroneously included certain expense amounts.  Op. Br. at 30. During the Florida Litigation, Appellants chose <u>not</u> to present the Debtor's own expert witness or their own calculation of damages.  *See* Settlement Motion at ¶ 22 (A000007); *Order Addressing Late Production and Incomplete Document Production* at 3-4, *GPDEV, LLC, et al. v. Team Sys. Int'l, LLC*, 18-cv-442 (Doc 243) (N.D. Fla. May 8, 2021) (T0089-T0090) ("At a nonevidentiary hearing on the motion on April 27, 2021, the defendant [the Debtor] announced it has decided not to contest the plaintiffs' [Judgment Creditors'] expert's calculation of revenue and expenses related to CLIN 16.  The defendant will instead put all its CLIN 16 eggs in the liability basket, asserting at trial, as it has all along, that the parties' contract does not reach CLIN 16, but not contesting the amount that will be due if the jury resolves that issue in the plaintiffs' favor.").

It appears that Appellants made a "strategic decision" not to contest the damages amount and not to even present an expert witness at trial in the Florida Litigation because of significant credibility issues with the Debtor's expert report.

*See* Settlement Motion at ¶ 22 ("Indeed, while the Debtor hired an expert regarding the net income and expenses, the Debtor's expert never testified at trial, the assumption being because the documents underlying his position were not reliable."); Tr. of Telephonic Status Conf. 7:17-20, *GPDEV, LLC, et al. v. Team Sys. Int'l, LLC*, 14-cv-442 (N.D. Fla. Apr. 27, 2021) (A000687) ("THE COURT: All right.  And so I think I understand.  From what you've just told me, I take it that where we are is this: You've made the strategic decision that you want to try to win the CLIN 16 issue on liability and not argue about the number?  MR. SMITH [Debtor's counsel]: That is correct, Your Honor.").

Appellants' "strategic decision" not to present evidence on the amount of damages and instead to put all of the "eggs in the liability basket" precludes Appellants from now seeking to challenge the amount of damages.  *Order Addressing Late Production and Incomplete Document Production* at 3-4, *GPDEV, LLC, et al. v. Team Sys. Int'l, LLC*, 18-cv-442 (Doc 243) (N.D. Fla. May 8, 2021) (T0089-T0090).  Thus, Appellants' damage amount argument provides no basis to disturb the Bankruptcy Court's ruling approving the Settlement.

### 5.    The Settlement Provides the Best Outcome for the Estate.

Based upon his analysis, the Trustee determined that the only argument in the Eleventh Circuit Appeal that had any merit at all was the challenge to the Florida District Court's award of approximately $991,000 in prejudgment interest to the

Judgment Creditors. *See Settlement Motion*, ¶¶ 7-8, 25 (A000002, A000009); Hr'g Tr. 44-45 (A000770-A000771). Appellants' arguments regarding the prejudgment interest are misplaced because the record shows that the Trustee considered this issue and factored it into the Settlement. *See Settlement Motion*, ¶ 25 (A000009); Hr'g Tr. 44-45 (A000770-A000771). Indeed, the Settlement reflects a reduction of more than $619,000. *Id.* This is in addition to the savings to the estate of potentially $500,000 to $1 million in additional legal fees in pursuing the Eleventh Circuit Appeal. *See* Hr'g Tr. 46:4-9 (A000772). Thus, the Settlement provides a better outcome for the estate than the likely best outcome in litigating the Eleventh Circuit Appeal.

In their Opening Brief, Appellants do not even attempt to address the last argument made in the Eleventh Circuit Appeal, namely, their assertion that the judge in the Florida Litigation should have recused himself. *Compare* TSI 11th Cir. Br. at 48 (A000232) (raising recusal), *with* Op. Br. (not raising recusal). In approving the Settlement, the Bankruptcy Court considered the recusal argument and rejected it, stating "to describe that argument as a 'weak' one is overly generous to the argument." Hr'g Tr. 104:10-13 (A000830) (observing that "[t]he standard for seeking recusal when -- in the absence of anything extrajudicial is surpassingly high."). Appellants appear to have recognized the futility of that argument by abandoning it in this appeal.

### 6.    The Trustee Articulated a Reasoned and Legitimate Business Justification for the Settlement.

Appellants contend that the Trustee did not provide the Bankruptcy Court with a valid reason to conclude the Eleventh Circuit Appeal.  Op. Br. at 32-33.

As set forth in detail above, Appellants' assertion is simply untrue.  The record reflects that the Trustee articulated numerous legitimate business justifications for entering into the Settlement, including a $619,000 reduction to the Judgment Creditors' claims and saving the estate potentially $500,000 to $1 million or more in additional legal fees in pursing an Eleventh Circuit Appeal, where there is a lack of credible evidence and where the arguments range from "low" to "weak," if one were being "overly generous."  *See* Settlement Motion ¶¶ 3-28 (A000002-A000009); Hr'g Tr. 99:15-105:23 (A000825-A000831).

In light of the facts and circumstances presented, the Trustee's entry into the Settlement was not only within the range of reasonableness, it was the best option available.

The first *Martin* factor, probability of success, weighs in favor of the Settlement.

### D.    The Settlement Avoids the Costs and Complexity of an Appeal That Is Unlikely to Succeed.

The Trustee testified at the September 20, 2023 hearing that he has been involved in thousands of pieces of litigation.  *See* Hr'g Tr. at 62:9-12 (A000788).

Based upon the Trustee's experience, he determined it would cost the Debtor's estate "anywhere between 500,000 and $1 million" to pursue the Eleventh Circuit Appeal and related litigation. Hr'g Tr. at 46:9 (A000772). The Trustee also testified that he considered, and rejected, Appellants' proposal as inadequate. *See* Hr'g Tr. 46:21-47:4 (A000772-A000773).

Appellants contend the Eleventh Circuit Appeal "can be completed at no cost to the Estate." Op. Br. at 33. However, Appellants presented no witnesses of their own and offered no evidence at the September 20, 2023 hearing to either rebut the Trustee's testimony or to support a different cost estimate for the Eleventh Circuit Appeal. *See generally* Hr'g Tr. 36-78 (A000764-A000804).

Further, as discussed above, Appellants' assets remain subject to a preliminary injunction. *See supra* Section II.B. Appellants have wholly failed to explain how they could possibly "fund the entire cost of prosecuting the Appeal" while complying with the preliminary injunction. Op. Br. at 33.

In addition to the costs, the Settlement avoids the complexities of pursuing the Eleventh Circuit Appeal, as well as the inevitable delay in administering the bankruptcy case. *See supra* Sections II.B & C.

Accordingly, the third *Martin* factor, the costs and complexity of litigation, weighs in favor of the Settlement.

**E.    The Settlement is in the Best Interests of the Estate and Creditors.**

In their final argument, Appellants attempt to create a new standard that would consider not only the paramount interests of the estate and creditors, but also defendants in litigation. *See* Op. Br. 36. Appellants' position has no basis in law or fact.

As discussed above, the benefits of the Settlement to the Debtor's estate and creditors include a $619,000 reduction to the largest claims and the avoidance of six- to seven-figures of litigation costs. *See* Settlement Motion ¶¶ 3-28 (A000002-A000009); Hr'g Tr. 99:15-105:23 (A000825-A000831). The Settlement also provides finality to a litigation process that has been ongoing in the Florida District Court and the Eleventh Circuit since September 2018, and avoids the estate incurring an additional $500,000 to $1 million in additional administrative expenses. *See* Settlement Motion ¶¶ 3-28 (A000002-A000009); Hr'g Tr. 99:15-105:23 (A000825-A000831). Those are significant, demonstrable benefits to the bankruptcy estate and creditors.

Appellants argue the Settlement may cause harm to the Debtor and to them. *See* Op. Br. 37-38. First, the Debtor has not been operating and has been in chapter 7 liquidation for approximately two years. *See generally In re Team Sys. Int'l, LLC*, 22-10066-CTG (Bankr. D. Del.). Second, Appellants offer only speculation about the alleged potential harms to them. As discussed above, Appellants concern about

being "perceived to have entered into such an agreement" with the Judgment Creditors (Op. Br. at 38) is contradicted by their own statements in the appeal brief in the Eleventh Circuit Appeal in which they state they revised the agreement with the Judgment Creditors to avoid that very issue. *See supra* Section II.C.1. The Settlement plainly does not concede any of the arguments that Appellants claim to be concerned about; rather, the Settlement recognizes the reality of the state of the litigation that the Trustee inherited from Appellants when the Debtor's bankruptcy case was converted for cause to chapter 7 liquidation. *See* Settlement Motion ¶¶ 3-28 (A000002-A000009); Hr'g Tr. 99:15-105:23 (A000825-A000831).

Appellants spend more than four pages of their Opening Brief expressing concern that the Settlement could "jeopardize government payment of the Debtor's receivables." Op. Br. at 38-42. But, as Appellants are well aware, the Debtor's claim against FEMA has been rejected twice and is currently being litigated before the Federal Circuit. *See* Hr'g Tr. at 48-50 (A000774-A000776). Given that FEMA was already actively contesting the Debtor's claim against FEMA long <u>before</u> the Trustee entered into the Settlement, Appellants have failed to articulate any reason why the Settlement would alter that state of affairs in any way. Moreover, if these concerns were legitimate, presumably Appellants would not have spilled so much ink in a public Court filing alerting FEMA to the very issue Appellants claim they do not want FEMA to know.

30

As set forth above, Appellants spent more than three years litigating with the Judgment Creditors in the Florida Litigation. Serious credibility issues were raised during that litigation. The case was tried to a jury, and Appellants lost. Appellants appealed the judgments, but failed to post a bond. When the Judgment Creditors attempted to collect on their judgments, Appellants put the Debtor in chapter 11. Barely two months later, the Bankruptcy Court, for cause, converted the Debtor's bankruptcy case to a case under chapter 7.

Appellants argue that the Trustee should not have entered into the Settlement and instead should resume the litigation, even though (i) the Debtor's estate lacks the financial resources to do so, (ii) the Debtor lacks credible witnesses and complete books and records, and (iii) the probability of success of any of the arguments on appeal range from "low" to "exceedingly low."

The Bankruptcy Court correctly concluded that the Settlement is fair, reasonable, and in the interests of the estate and creditors. The Bankruptcy Court also correctly concluded that none of the arguments raised in the Eleventh Circuit Appeal is likely to succeed. The Settlement avoids significant costs, risks and delays of pursuing the Eleventh Circuit Appeal and represents a meaningful reduction to the Judgment Creditors' claims against the Debtor's estate, thus benefiting the estate and creditors. The Settlement is in the paramount interest of creditors, was properly approved by the Bankruptcy Court, and should be affirmed by this Court.

## **<u>CONCLUSION</u>**

For the reasons set forth above, this Court should affirm the ruling of the Bankruptcy Court approving the Settlement.

Dated: April 5, 2024            CHIPMAN BROWN CICERO & COLE, LLP

*/s/ Bryan J. Hall*
David W. Carickhoff (No. 3715)
Bryan J. Hall (No. 6285)
Hercules Plaza
1313 N. Market Street, Suite 5400
Wilmington, Delaware 19801
(302) 295-0191
(302) 295-0199 (fax)
carickhoff@chipmanbrown.com
hall@chipmanbrown.com

-and-

Adam D. Cole, Esq. (admitted *pro hac vice*)
501 5th Ave. 15th Floor
New York, New York 10017
(646) 685-8363
cole@chipmanbrown.com

*Counsel to the Chapter 7 Trustee*