IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE:<br>TEAM SYSTEMS INTERNATIONAL, LLC,<br><br>          Debtor.<br>––––––––––––––––––––––––––––––<br><br>STEVEN M. ACOSTA, JOHN S.<br>MACIOROWSKI, CHRISTOPHER MOTT,<br>And DEBORAH EVANS MOTT,<br><br>          Appellants,<br><br>          v.<br><br>GEORGE L. MILLER, solely in his capacity as<br>the Chapter 7 Trustee of the estate of Teams<br>Systems International, LLC,<br><br>          Appellee. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Chapter 7<br><br>Case No. 22-10066 (CTG)<br><br><br><br><br><br><br><br>Civ. No. 23-1038-GBW |

## MEMORANDUM OPINION

Kevin S. Mann, CROSS & SIMON, LLC, Wilmington, DE; Michael M. Munoz, GOLENBOCK ASSOR BELL & PESKOE LLP, New York, NY– Counsel to Appellants.

David W. Carickhoff, Bryan J. Hall, CHIPMAN BROWN CICERO & COLE, LLP, Wilmington, DE; Adam D. Cole, CHIPMAN BROWN CICERO & COLE, LLP, New York, NY – Counsel to Appellee.

December 6, 2024
Wilmington, Delaware

**WILLIAMS, U.S. DISTRICT JUDGE:**

This matter arises out of the chapter 7 case of Team Systems International, LLC ("TSI" or

the "Debtor") in connection with the Bankruptcy Court's September 20, 2023 Order (Bankr. D.I.

367; A003227-A003228)[1] (the "Settlement Order"), entered following an evidentiary hearing,[2]

which authorized and approved a settlement between the chapter 7 trustee (the "Trustee") and

certain judgment creditors pursuant to section 105(a) of the Bankruptcy Code and Rule 9019 of

the Federal Rules of Bankruptcy Procedure.  Steven M. Acosta, John S. Maciorowski, Christopher

Mott, and Deborah Evans Mott ("Appellants"), the Debtor's members, who are equity holders in

the Debtor, and who, by virtue of the conversion of this case from chapter 11 to chapter 7, have

been removed from managerial control over the Debtor, have appealed the Settlement Order.  (*See*

D.I. 4.)  Appellants assert that the Debtor is likely to prevail in its appeal of an approximately $6.2

million judgment against it, and the Bankruptcy Court abused its discretion in approving the

settlement of that appeal as fair, reasonable, and in the interests of the estate.  Conversely, the

Trustee asserts that Appellants, who are not creditors of the estate, have failed to show that the

Settlement Order has any direct and adverse pecuniary effect on them and that they therefore lack

prudential standing to appeal the Order.  Even if Appellants have standing, the Trustee asserts, the

Bankruptcy Court's approval of the settlement was a sound exercise of its discretion and should

be affirmed, as the Debtor's estate lacks the financial resources to pursue the appeal, the Debtor

lacks credible witnesses and complete books and records, and the probability of success of any of

---

[1] The docket of the Chapter 7 case, captioned *In re Team Sys. Int'l, LLC,* No. 22-10066 (CTG)
(Bankr. D. Del.), is cited herein as "Bankr. D.I. __."  The appendix (D.I. 13) filed in support of
Appellants' opening brief is cited herein as "A__," and the appendix (D.I. 17-2) filed in support
of the Trustee's answering brief is cited herein as "T__."

[2] *See* A000761-A000833 ("9/20/23 Hr'g Tr.").

the arguments raised in the appeal range from "low" to "exceedingly low." For the reasons set forth herein, the Court will affirm the Settlement Order.

## I.    **BACKGROUND**

The Debtor's bankruptcy case was preceded by three years of litigation between TSI and its largest creditors in the U.S. District Court for the Northern District of Florida (the "Florida Litigation" and the "Florida District Court"). (*See* A000170-A000247 ("TSI 11th Cir. Br.") at 9.)

The Debtor, which had operated as a government contractor, sought to bid on a contract to procure bottled water for the U.S. Federal Emergency Management Agency ("FEMA"). (*See id.* at 5.) The Debtor enlisted the help of certain third parties, including GPDEV, LLC and Simons Exploration, Inc. (together, the "Judgment Creditors"). (*See id.* at 5-6.) The Debtor entered into a consulting agreement with the Judgment Creditors, which provided, in relevant part, that the Judgment Creditors were entitled to 25% of the "Net Income" from the Debtor's supply of bottled water. (*See id.* at 7; *see also In re Team Sys. Int'l,* 640 B.R. 296, 303 (Bankr. D. Del. 2022) (memorandum opinion in support of order converting case to Chapter 7).) The Debtor obtained a lucrative contract with FEMA and, ultimately, FEMA paid the Debtor more than $37 million for procuring bottled water for delivery to Puerto Rico in response to Hurricane Maria. (*See* A000399 (Tr. of Jury Trial – Day 2 at 315:16- 24, *GPDEV, LLC et al. v. Team Sys. Int'l, LLC,* No. 18-cv-442 (N.D. Fla. Aug. 24, 2021).)

In September 2018, the Judgment Creditors sued the Debtor for allegedly underpaying them. (*See* TSI 11th Cir. Br. at 9.) During the Florida Litigation, there were multiple allegations of misconduct made against the Debtor's representatives. *See In re Team Sys. Int'l,* 640 B.R. at 303-04. Among other things, the Judgment Creditors moved the Florida District Court to hold an evidentiary hearing to establish that documents produced by TSI were fraudulent, pointing out a number of peculiar inconsistencies between the documents produced and TSI's previously

produced bank records. *Id.* at 304.  While the Florida District Court observed that the Judgment Creditors "made a strong showing that something was amiss," TSI avoided an evidentiary hearing by stipulating to the Judgement Creditors' calculation of revenue and expenses, thus putting "all its … eggs in the liability basket." *Id.*

Following a trial by jury in August 2021 before a jury, the Judgment Creditors prevailed. (*See* A002460-A002461 (Order for Entry of Judgment at 3-4, *GPDEV, LLC, et al. v. Team Sys. Int'l, LLC,* 18-cv-442 (N.D. Fla. Sept. 28, 2021)).)  The Florida District court observed that, based on the evidence before it, the jury "could hardly have reached a contrary conclusion." *See In re Team Sys. Int'l,* 640 B.R. at 304.  As the parties had agreed, the Florida District Court calculated the prejudgment interest and entered judgment in favor of the Judgment Creditors in an amount that totaled approximately $6.2 million (*see* A002469-A002470) (the "Judgment").

On or about December 29, 2021, TSI appealed the Judgment to the U.S. Court of Appeals for the Eleventh Circuit (Case No. 21-13662) ("Eleventh Circuit Appeal"), asserting several grounds to reverse the Judgment. (*See* TSI 11th Cir. Br.)  Appellants, as managers or members of the Debtor, sought a stay of the Judgment pending appeal, but as the Florida District Court explained, the way to obtain a stay of a money judgment (as opposed to a stay of an injunction) is to post a supersedeas bond, as Federal Rule of Civil Procedure 62(b) provides. *In re Team Sys. Int'l,* 640 B.R. at 305.

The Judgment Creditors commenced judgment enforcement and, in response, on January 18, 2022, Appellants, as managers and/or members of the Debtor, caused the Debtor to file a voluntary bankruptcy case under chapter 11 of the Bankruptcy Code. (*See* A000001-A000026 ("Settlement Motion") ¶ 3.)  Two months later, on March 31, 2022, the Bankruptcy Court converted the Debtor's case to a case under chapter 7, and the Trustee was appointed. (*Id.* ¶¶ 4-5.)

3

On April 27, 2022, the Judgment Creditors each filed a proof of claim premised on the Judgment, seeking an aggregate amount of approximately $6.2 million. The Trustee investigated the Judgment Creditors' claims, the Florida Litigation, and the Eleventh Circuit Appeal. (*See id.* ¶ 20.) The Trustee initially viewed the Eleventh Circuit Appeal as having some merit. (*See e.g.,* A003115-A003142 ¶ 28 (acknowledging that "prosecution of the [Eleventh Circuit] Appeal may be in the best interests of the other creditors"); A000103 (testifying that he "think[s] [the Eleventh Circuit Appeal] has merit" and that issues raised on appeal should be further explored "because the mistakes are so large, you know, we're talking several million dollars."); A003124 (arguing that "[d]espite the [Judgment Creditors'] efforts to undermine the arguments raised by the Debtor in the Appeal and Opening Brief, the Appeal is compelling").)

On July 21, 2023, the Trustee filed the Settlement Motion, based in part on the Trustee's judgment, after further analysis and investigation, that the arguments presented in the Eleventh Circuit Appeal were not likely to succeed. (Settlement Motion ¶¶ 20-25; 9/20/23 Hr'g Tr. 38:4-21.) The Trustee further determined that substantially all electronic records were destroyed, and a substantial amount of the documents were altered, prior to the Trustee's receipt of the evidence. (Settlement Motion ¶ 24; 9/20/23 Hr'g Tr. 42:11-20, 43:17-22, 81:11-18.) In the Trustee's judgment, the Settlement Motion asserted, credible evidence would be required to prosecute the Eleventh Circuit Appeal and to be successful in prosecuting the litigation. (*See id.*)

The proposed settlement, on the other hand, reduced the Judgment Creditors' claims against the Debtor by more than $619,000. (*See id.* ¶ 11(b).) The settlement also avoided the delay, risks, and costs of further litigation with the Judgment Creditors, which the Trustee estimated would cost between $500,000 and $1 million—funds the Debtor's estate did not have. (*See* 9/20/23 Hr'g Tr. 44:24-45:3, 46:4-9.) While Appellants preliminarily offered approximately

$30,000 for these costs, the Trustee viewed this as insufficient, and in any event, no final agreement with Appellants was reached. (*See* 9/20/23 Hr'g Tr. 66:22-68:6.)

On September 20, 2023, the Bankruptcy Court conducted a hearing on the Settlement Motion. (*See* 9/20/23 Hr'g Tr. 35-107.) In approving the settlement, the Bankruptcy Court considered and rejected each of the arguments raised in the Eleventh Circuit Appeal. Finding the settlement to be fair, reasonable, and in the interests of the estate, the Bankruptcy Court entered the Settlement Order. (A003227-A003228.)

On September 21, 2023, Appellants filed a timely notice of appeal. (D.I. 1.) The appeal is fully briefed. (D.I. 12, 17, 19, 20, 21.) No party requested oral argument.

## II.    JURISDICTION AND STANDARD OF REVIEW

The Settlement Order is final, and the Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1). In conducting its review of the issues on appeal, this Court reviews the Bankruptcy Court's findings of fact for clear error and exercises plenary review over questions of law. *See American Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). The Court must "break down mixed questions of law and fact, applying the appropriate standard to each component." *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992).

On appeal, a decision to approve a settlement is reviewed for abuse of discretion. *In re NovaPro Holdings, LLC*, 815 F. App'x 655, 657 n.6 (3d Cir. 2020) ("We apply the same standard as the District Court and review the approval of a settlement for an abuse of discretion."); *In re Nutraquest, Inc.*, 434 F.3d 639, 645 (3d Cir. 2006) ("[F]or us to find an abuse of discretion the District Court's decision must rest on a clearly erroneous finding of fact, an

errant conclusion of law or an improper application of law to fact."); under *Myers v. Martin (In re Martin)*, 91 F.3d 389, 391 (3d Cir. 1996) (applying abuse of discretion standard).

## III.   <u>STANDING</u>

As the Bankruptcy Court has observed, Appellants, who hold equity in the Debtor, are parties-in-interest in the bankruptcy case and have standing to appear in the bankruptcy case and be heard on any dispute that might affect the value of their equity interests in the Debtor. *In re Team Sys. Int'l, LLC*, 2024 WL 386823, at *2 (Bankr. D. Del. Feb. 1, 2024). The standard is different on appeal. Only "persons aggrieved" by an order of the Bankruptcy Court have standing to appeal from such an order. *In re Prospector Offshore Drilling S.à R.L.*, 2019 WL 1150563, at *6 (D. Del. Mar. 12, 2019), *aff'd sub nom. In re Paragon Offshore plc*, 2022 WL 1055574 (3d Cir. Apr. 8, 2022) (holding an out-of-the-money equity holder lacked standing to appeal a bankruptcy court order approving a settlement modifying the chapter 11 confirmation order) (citing *In re Revstone Indus. LLC*, 690 F. App'x 88, 89 (3d Cir. 2017) and *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 214 (3d Cir. 2004)).

"Persons aggrieved" must show that the order of the bankruptcy court diminishes their property, increases their burdens, or impairs their rights. *In re Combustion Eng'g*, 391 F.3d at 214 (cleaned up). "Only those whose rights or interests are directly and adversely affected pecuniarily by an order of the bankruptcy court may bring an appeal." *In re PWS Holding Corp.*, 228 F.3d 224, 249 (3d Cir. 2000) (cleaned up). "The 'persons aggrieved' test is more restrictive than the 'case or controversy' standing requirement of Article III, which "need not be financial and need only be 'fairly traceable' to the alleged illegal action." *Travelers Ins. Co. v. U.K. Porter Co.*, 45 F.3d 737, 741 (3d Cir. 1995) (quoting *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 642 n.2 (2d Cir. 1988)). Because bankruptcy proceedings typically involve a "myriad of parties ... indirectly affected by every bankruptcy court order," *Kane,* 843 F.2d at 642, the

need to limit collateral appeals is particularly acute. *Travelers Ins. Co.,* 45 F.3d at 741. The
Third Circuit has found a lack of appellate standing for parties "who, even though they may be
exposed to some potential harm incident to the bankruptcy court's order, [they] are not directly
affected by that order." *Id.* (internal quotation marks omitted).

As the Trustee correctly argues, the settlement reduced the Judgment Creditors' claims
against the Debtor's estate by $619,000 and allowed the claims in the reduced amount. The only
parties "directly and adversely affected pecuniarily" by the allowance of such claims are the
Debtor's other creditors, none of whom objected to the settlement. *See* 11 U.S.C. § 726(a)(2)
(providing equal treatment for all similarly situated allowed unsecured claims against an estate);
*see also* 11 U.S.C. § 726(a)(6) (treating equity interests as subordinate to creditor claims).
Appellants failed to file proofs of claim and are not creditors.

Appellants argue that they have prudential standing because they "have a significant
economic interest in, and are adversely affected by, the Proposed Settlement." (D.I. 12 at 12.)
This is based on Appellants' contention that they are "residual stakeholders in what they
maintain is a solvent chapter 7 estate," a claim which is itself based on Appellants' expectation
that the estate will receive a $13.5 million payment from FEMA. (*See id.* at 12-13.) The
Debtor's claim was denied by FEMA, however, and then by the U.S. Civilian Board of Contract
Appeals. *See Team Sys. Int'l, LLC v. Sec. of Dep't of Homeland Sec.,* 23-1556, D.I. 46 (Fed. Cir.
Jul. 15, 2024). On July 15, 2024, the U.S. Court of Appeals for the Federal Circuit entered a
judgment affirming the denial of the Debtor's claim against FEMA. (*Id.*; D.I. 20-2.) The Court
agrees that any remaining potential for recovery is at best both contingent and speculative.

Appellants further contend that the settlement "greatly affects their individual economic
and other rights" which is based on their expectation that, post-chapter 7, the Debtor will remain
"a viable business which the Members will own and intend to operate." (D.I. 12 at 12.) In this

context, Appellants posit that abandoning the Eleventh Circuit Appeal, as part of the settlement, could undermine their ability to secure future government contracts and/or place at risk anticipated future payments from FEMA from contracts already performed by the Debtor.  (D.I. 12 at 13; D.I. 19 at 1.)  But the Debtor's case was converted to a chapter 7 liquidation more than two years ago, and the Debtor has not operated since then.  *See In re Team Sys. Int'l,* 640 B.R. at 319.  Appellants failed to substantiate their assertions of potential future fuel fulfillment contracts or anticipated future payments by offering any evidence to the Bankruptcy Court.  *See In re Team Sys. Int'l,* 640 B.R. at 319 (holding "the record in this case does not support a finding that a few stray government contracts – ones that the debtor was unable to identify or describe with any clarity – amount to a business around which the debtor can successfully reorganize"); *see also* 9/20/23 Hr'g Tr. 51:9-13 (Trustee testifying that he is not aware of any outstanding amounts due from any other government contracts.)  Thus, at best, Appellants point only to "potential harm," which is insufficient to establish appellate standing.  *Travelers,* 45 F.3d at 741; *In re Combustion Eng'g,* 391 F.3d at 215 (a showing of potential harm incidental to the order is not enough).

Appellants further contend that they are creditors of the Debtor because they were sued by the Trustee.  (D.I. 12 at 14.)  The Bankruptcy Court properly rejected this argument:

> Because the objecting defendants are being sued for a fraudulent conveyance, with the trustee's claim to recover the allegedly fraudulent conveyance arising under § 550, the objecting defendants assert that § 502(h) renders them creditors.  But that is wrong.  Section 502(h) does not create a claim, it merely addresses when a claim that might come into being as a result of the trustee's recovery of property would arise.

*In re Team Sys. Int'l, LLC,* 2024 WL 386823, at *3.  The argument has been rejected by other courts as well.  *See e.g., In re Redf Mktg., LLC,* 536 B.R. 646, 655 (Bankr. W.D.N.C. 2015); *In re Dreier LLP,* 2012 WL 4867376, at *3 (Bankr. S.D.N.Y. Oct. 12, 2012); *In re S. Indus.*

*Banking Corp.*, 66 B.R. 349, 361 (Bankr. E.D. Tenn. 1986).  In sum, Appellants have failed to

show that they are creditors who are "directly and adversely affected pecuniarily" by the

allowance of the Judgment Creditors' claims.  *See In re Team Sys. Int'l*, 2024 WL 386823, at *3

("The objecting defendants (despite being given every opportunity to offer a theory) have made

no suggestion that there is any circumstance in which they would hold a claim against the

debtor.").

 The decisions cited by Appellants in support of their standing argument are

distinguishable.  (D.I. 12 at 12-13.)  In *Remsen Partners*, the party challenging the settlement

was a law firm retained during the chapter 11 case and, therefore, was a chapter 11

administrative creditor, not an equity holder, like Appellants here.  *See In re Remsen Partners,*

*Ltd.*, 294 B.R. 557, 562, 571 (Bankr. S.D.N.Y. 2003).  In *RFE Industries*, the Third Circuit held

that a chapter 11 debtor had standing to object to a settlement in a case where the debtor's

creditors had already been paid "in full."  *In re RFE Indus., Inc.*, 283 F.3d 159, 162 (3d Cir.

2002).  Here, Appellants do not dispute that creditors have not been paid in full or that there are

millions of dollars of unpaid claims reflected on the claims register.  (*See* D.I. 19.)

 Finally, Appellants argue that "the Trustee acknowledged the Members' standing to make

this Objection by serving notice of the [Settlement] Motion upon counsel representing the

Members."  (D.I. 12 at 15.)  This argument is without merit.  Appellants have appeared in the

bankruptcy case, so they are routinely served with motions.  *See* Fed. R. Bankr. P. 2002.  Notice

does not equate to standing.  Regardless of whether Appellants might have had standing to object

to the Settlement Motion before the Bankruptcy Court, Appellants are required to establish that

they have prudential standing before this Court to pursue this appeal.  *See Prospector Offshore*

*Drilling*, 2019 WL 1150563, at *6 (rejecting equity holders' argument that, because they had

standing before the bankruptcy court, they also had appellate standing).  Appellants have made

no such showing.  Accordingly, the appeal should be dismissed.

## IV.    DISCUSSION

Even assuming that Appellants have standing to appeal the Settlement Order, the Court

holds, in the alternative, that approval of the settlement was a sound exercise of the Bankruptcy

Court's discretion.

Bankruptcy Rule 9019 provides that, "[o]n motion by the trustee and after notice and a

hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).  In

considering a compromise or settlement under Rule 9019, a court should determine whether the

compromise is fair, reasonable, and in the interests of the estate. *In re Marvel Entm't Group,*

*Inc.*, 222 B.R. 243, 249 (D. Del. 1998).  In making this determination, the Third Circuit has

recognized "four criteria that a bankruptcy court should consider in striking this balance: (1) the

probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of

the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4)

the paramount interest of the creditors." *In re Martin*, 91 F.3d at 393; *see, e.g., In re NovaPro,*

815 F. App'x at 657 (applying *Martin* factors); *In re Nutraquest, Inc.*, 434 F.3d at 644 (holding

the *Martin* test applies to settlements of claims against the debtor).

When applying the *Martin* factors, a court "is not supposed to have a minitrial on the

merits, but should canvass the issues to see whether the settlement falls below the lowest point in

the range of reasonableness." *Aetna Casualty & Surety Co. v. Jasmine, Ltd (In re Jasmine, Ltd.),*

258 B.R. 119, 123 (D.N.J. 2000) (internal quotations omitted).  Courts generally defer to the

trustee's judgment in entering into a settlement "so long as there is a legitimate business

justification" for doing so. *In re Martin*, 91 F.3d at 395.  The decision as to whether to approve a

settlement lies within the sound discretion of the court. *In re Neshaminy Office Bldg. Assocs.,* 62 B.R. 798, 803 (E.D. Pa. 1986).

### A.    The Record Supports the Determination that the Trustee Demonstrated a Legitimate Business Justification for Entering Into the Settlement

Appellants contend that the Trustee "rushed" into the settlement and did not provide the Bankruptcy Court with a valid reason to conclude the Eleventh Circuit Appeal. (D.I. 12 at 32-33.) This assertion is undermined by the record below, which supports the Trustee's position that he investigated the Judgment Creditors' claims, the Florida Litigation, and the Eleventh Circuit Appeal. (*See* Settlement Motion ¶ 20; 9/20/23 Hr'g Tr. 38-51 (testimony of the Trustee).) Following his appointment, the Trustee filed objections to the proofs of claim filed by the Judgment Creditors, but the Bankruptcy Court issued a decision overruling those objections. (*See* Settlement Motion ¶ 9.) Later, the Trustee and the Judgment Creditors engaged in extensive arm's length negotiations. (*See id.* ¶ 20; 9/20/23 Hr'g Tr. 44, 64-65.) The Trustee entered into the settlement fifteen months after his appointment.

Appellants argue there is no "compelling bankruptcy or non-bankruptcy reason" to enter into the settlement. (D.I. 12 at 1, 3.) The record demonstrates, however, that the Trustee articulated several reasonable business justifications for his decision. Among other things, the settlement reduced the Judgment Creditors' claims by approximately $619,000. (*See* Settlement Motion ¶ 11(b); 9/20/23 Hr'g Tr. 44-45.) As the Trustee testified, the settlement further avoided the costs and delay of protracted litigation over the Eleventh Circuit Appeal and potentially a new trial on the merits, costs which he estimated to be between $500,000 and $1 million. (*See* Settlement Motion ¶ 20 (A000006); 9/20/23 Hr'g Tr. 46-47.) The Trustee further testified that the estate did not have the resources to litigate the Eleventh Circuit Appeal. (*See* 9/20/23 Hr'g Tr. 44-46.) While Appellants made an initial offer to fund the litigation, the Trustee testified that

this offer was never formalized and was insufficient to fund the Eleventh Circuit Appeal and associated litigation. (*See* 9/20/23 Hr'g Tr. at 46-47.)

In support of the settlement, the Trustee noted that the Debtor's estate lacked credible witnesses. (*See* Settlement Motion ¶ 22 ("As a threshold matter, the Debtor appears to have had credibility issues throughout the Florida litigation, including with respect to the reliability of its documents").) The Trustee further noted the Debtor's failure to produce a trial expert to testify to Debtor's net income and expenses. (*Id.* at ¶ 22). The Trustee noted these concerns "undercut[] the likelihood of succeeding on any issue requiring reliable evidence from the Debtor." (*Id.*) The Trustee further noted that he did not have a complete set of the Debtor's books and records with which to pursue the Eleventh Circuit Appeal. (*See, e.g.*, Settlement Motion ¶ 24; 9/20/23 Hr'g Tr. at 42-43; 65-66.)

Having considered the foregoing, the Trustee determined in the reasonable exercise of his business judgment to enter into the settlement with the Judgment Creditors. (*See* Settlement Motion ¶¶ 19-28; 9/20/23 Hr'g Tr. 38-51.) The Settlement Motion was served on notice to the Office of the United States Trustee, all creditors that filed claims, and all parties that have appeared in the case, including Appellants. (*See* Settlement Motion ¶ 29.) No creditor objected to the settlement; the only objection came from Appellants. (A000027.)

On September 20, 2023, the Bankruptcy Court heard evidence and considered the arguments made by the Trustee and by Appellants. (*See* 9/20/23 Hr'g Tr. 78-91.) At the conclusion of that hearing, the Bankruptcy Court made an oral ruling approving the settlement. (*See id.* at 99:15-105:23.) Based on the record, the Bankruptcy Court concluded that the Trustee had "appropriately considered the risks and opportunities presented by the possibility of the [Eleventh Circuit A]ppeal," that the Trustee's "decision to accept the settlement is the reasoned exercise of [his] judgment." (*Id.* at 99:19-100:1.)

Appellants point to no clearly erroneous finding of fact, errant conclusion of law, or improper application of law to fact that would warrant disturbing the Bankruptcy Court's determination that the Trustee appropriately informed himself of the risks and opportunities presented by the possibility of the Eleventh Circuit Appeal or that his decision to accept the settlement was informed and reasonable.

**B.    The Record Supports the Determination that the Settlement is Fair, Reasonable, and in the Interests of the Estate Pursuant to the *Martin* Factors[3]**

The Bankruptcy Court further concluded that "applying the Martin factors, I'm satisfied that the settlement is within the range of reasonable[ness] on the record as it exists before me." (9/20/23 Hr'g Tr. 99:19-100:1.) The Court agrees.

**1.    The Probability of Success in the Eleventh Circuit Appeal**

Appellants assert that the Debtor's Eleventh Circuit brief "articulates multiple grounds to overturn the Judgment" that are likely to succeed. (D.I. 12 at 17.) The Trustee testified, however, that, after consultation with his counsel, he determined that the Debtor was not likely to succeed on any of these grounds, with the exception of the award of prejudgment interest, consideration of which resulted in a significant reduction from the Judgment amount. (9/20/23 Hr'g Tr. at 44:7-19.) In addressing the first *Martin* factor, the Bankruptcy Court properly canvassed the issues raised on appeal and found that, aside from the issue of prejudgment interest, the probability of success of any of the arguments on appeal ranged from "low" to "exceedingly low." (*Id.* at 102:12-104:15.) The Court finds no error in the Bankruptcy Court's conclusion.

---

[3] As the Proposed Settlement addressed a claim *against* the Debtor, the parties agree that the second *Martin* factor—the likely difficulties in collecting on a claim—is not relevant.

*The unlawful contract argument.*  Appellants' main argument is that the Debtor is likely to succeed in the Eleventh Circuit Appeal because the Debtor's agreement with the Judgment Creditors was "illegal under federal law" as it provides for a "contingency percentage commission . . . .". (D.I. 12 at 17; *see also* D.I. 19 at 2-7.)  This argument is undermined, however, by Appellants' own brief filed in the Eleventh Circuit Appeal, which states that the Debtor "rejected substantial portions" of the Judgment Creditors' draft agreement, including language that contemplated such a commission. (*See* 9/30/23 Hr'g Tr. 102:24-103:4; TSI 11th Cir. Br. at 6 ("TSI rejected substantial portions of Plaintiffs' draft, including the language contemplating a commission 'for assistance in procuring the [FEMA] contract(s).'") (internal citation omitted); A002443-A002446 (redline of the Debtor's agreement with the Judgment Creditors).)  Moreover, as Appellants concede, TSI's affirmative defense that the agreement was unlawful was not raised until the trial.  The Florida District Court's decision not to allow Appellants to spring this new argument at trial would be reviewed for an abuse of discretion, yet Appellants have offered no argument that the Florida District Court abused its discretion in denying their request to amend an affirmative defense at trial.  As the Bankruptcy Court concluded, "the likelihood of success" of this argument is "low." (9/30/23 Hr'g Tr. 103:4.)

The Court finds no error in the Bankruptcy Court's determination that Appellants' prior conduct and the arguments they made in the Eleventh Circuit Appeal opening brief undermine their position here that the agreement can be challenged as unlawful.

*The lack of diversity jurisdiction argument.*  Appellants argue that the Florida District Court lacked diversity jurisdiction over the case. (*See* D.I. 12 at 23-24.)  However, the Florida District Court found "[i]t is more likely than not that the document" relied upon by the Debtor to contest diversity jurisdiction "was created after the jurisdictional issue arose and is not

authentic." (A001516-A001517 (Order Denying the Motions to Dismiss and Transfer at 4-5,

*GPDEV, LLC, et al. v. Team Sys. Int'l, LLC*, No. 18-cv-442 (D.I. 58) (N.D. Fla. May 8, 2021).)

Further, the deposition testimony of Appellant Steven Acosta during the Florida Litigation

regarding when he became a member of the Debtor raises additional credibility concerns that

further undermine any appeal based upon an alleged lack of jurisdiction. (*See* Tr. of Depo. of

Steven Acosta (Jan. 31, 2019) (A001324-A001408). The Court finds no error in the Bankruptcy

Court's determination that this "credibility assessment . . . would face a very high bar on appeal

and is highly unlikely to be overturned." (9/30/23 Hr'g Tr. at 102:21-23.)[4]

 ***The contract-based arguments.*** Appellants assert that the Eleventh Circuit Appeal

should be pursued because the Judgment Creditors were limited to commissions on bottled water

from Niagara only and not other bottled water or the drop containers in which the water was

shipped. (*See* D.I. 12 at 25-30.) But these factual issues were litigated in the Florida Litigation

and argued to a jury. (*See* A002459-A002460.) The jury rejected Appellants' argument and

found that the scope of the Debtor's agreement with the Judgment Creditors included bottled

water other than Niagara and included the shipping containers. (*See id.*) Appellants have not

attempted to show that the jury's findings regarding these matters were "against the great . . .

weight of the evidence." *Tracy v. Fla. Atl. Univ. Bd. of Trustees*, 980 F.3d 799, 811 (11th Cir.

---

[4] Appellants selectively quote from the Florida Litigation transcript, arguing that the Florida District Court had doubts about its jurisdiction ruling. (D.I. 12 at 24 ("Aware of this duty, the Florida District Court acknowledged, based on the points outlined and summarized above, that 'there is at least a significant possibility that the Eleventh Circuit will say I got it wrong; there's no federal jurisdiction.'").) (A001498.) As the Trustee points out, the Florida District Court made that statement in the context of a question posed to the Judgment Creditors' counsel, not as a concession, as Appellants imply. (*See* A001506 (stating, among other things, "[t]he greater weight of the evidence is that that [undated] Resolution was not prepared prior to the filing of this lawsuit. That's an inference I draw from the form of the document, from the entire record.").)

2020) ("Because it is critical that a judge does not merely substitute his judgment for that of the jury, new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence.") (internal citation and quotations omitted).

Appellants attempt to relitigate the arguments they made in the Florida Litigation that the Debtor's agreement with the Judgment Creditors was "unambiguous." (*See* D.I. 12 at 25-28.) The Florida District Court found, however, that the agreement was "astonishingly cryptic." (A002459). Having considered Appellants' arguments, the Bankruptcy Court properly concluded that "the probability of reversing the District Court's findings, as well as the jury's verdict on those grounds, is, again, exceedingly low." (9/30/23 Hr'g Tr. at 103:9-12.) Thus, Appellants' contract-based arguments provide no basis to disturb the Settlement Order.

***The erroneous damages argument.*** Appellants assert that the damage amounts awarded in the Florida Litigation erroneously included certain expense amounts. (D.I. 12 at 30.) During the Florida Litigation, however, Appellants chose not to present the Debtor's own expert witness or their own calculation of damages. (*See* Settlement Motion at ¶ 22; *see also* T0089-T0090 (Order Addressing Late Production and Incomplete Document Production, at 3-4, *GPDEV, LLC, et al. v. Team Sys. Int'l, LLC*, 18-cv-442 (D.I. 243) (N.D. Fla. May 8, 2021) ("At a non-evidentiary hearing on the motion on April 27, 2021, [the Debtor] announced it has decided not to contest the [Judgment Creditors'] expert's calculation of revenue and expenses related to CLIN 16. The defendant will instead put all its CLIN 16 eggs in the liability basket, asserting at trial, as it has all along, that the parties' contract does not reach CLIN 16, but not contesting the amount that will be due if the jury resolves that issue in the plaintiffs' favor.").

The record supports a finding that Appellants made a "strategic decision" to neither contest the damages amount nor present an expert witness at trial in the Florida Litigation. (*See*

A000687 (Apr. 27, 2021 Hr'g Tr.) ("THE COURT: All right. And so I think I understand. From what you've just told me, I take it that where we are is this: You've made the strategic decision that you want to try to win the CLIN 16 issue on liability and not argue about the number? MR. SMITH [Debtor's counsel]: That is correct, Your Honor.").) Appellants' "strategic decision" not to present evidence on the amount of damages and instead to put all of the "eggs in the liability basket" precludes Appellants from now seeking to challenge the amount of damages. Thus, Appellants' damage amount argument provides no basis to disturb the Settlement Order.

*The prejudgment interest argument.* Appellants contend that, on appeal, the Debtor is likely to prevail on its challenge in the Eleventh Circuit that the award of approximately $991,000 of prejudgment interest should be reversed. Appellants contend that the Debtor is likely to prevail on its arguments that only post-judgment interest should apply or that any pre-judgment interest should accrue from the date of the verdict. (*See* D.I. 12 at 31 (citing A000228–A000231).) Appellants' arguments regarding the prejudgment interest are misplaced, however, because the record shows that the Trustee considered this issue and factored it into the settlement. (*See* Settlement Motion ¶¶ 7-8, 25 (A000009); 9/30/23 Hr'g Tr. at 44-45.) Indeed, the settlement reflects a reduction of the Judgment by more than $619,000. (*Id.*)

*The recusal argument.* Finally, the Debtor's Eleventh Circuit appeal raises the argument that the judge in the Florida Litigation should have recused himself. (TSI 11th Cir. Br. at 48.) In approving the Settlement, the Bankruptcy Court canvassed the recusal argument and rejected it: as the Bankruptcy Court observed, "to describe that argument as a 'weak' one is overly generous to the argument." (9/30/23 Hr'g Tr. 104:10-13 (observing that "[t]he standard for seeking recusal when—in the absence of anything extrajudicial is surpassingly high.") Appellants appear to have recognized the futility of that argument by abandoning it in this appeal.

17

With respect to the first *Martin* factor—the Debtor's likelihood of success on the Eleventh Circuit Appeal—the Bankruptcy Court properly canvassed the issues on appeal, and the Court finds no error in its conclusion that the Debtor's "low" to "exceedingly low" likelihood of the success with respect to those issues not already factored into the settlement weighed in favor of the proposed compromise.

### 2. The Complexity of the Litigation and the Attendant Expense, Inconvenience, and Delay

The Trustee testified at the September 20, 2023 hearing that he has been involved in thousands of pieces of litigation. (*See* 9/20/23 Hr'g Tr. at 62:9-12.) Based on his experience, he determined it would cost the Debtor's estate "anywhere between 500,000 and $1 million" to pursue the Eleventh Circuit Appeal and related litigation. (*Id.* at 46:9.) The Trustee further testified that he considered, and rejected, Appellants' $30,000 litigation funding proposal as inadequate. (*Id.* at 46:21-47:4.)

Appellants contend the Eleventh Circuit Appeal "can be completed at no cost to the Estate." (D.I. 12 at at 33.) However, Appellants presented no witnesses of their own and offered no evidence at the September 20, 2023 hearing to either rebut the Trustee's testimony or to support a different cost estimate for the Eleventh Circuit Appeal. (*See* 9/20/23 Hr'g Tr. at 36-78.) In addition to these costs, the settlement avoids the complexities of pursuing the Eleventh Circuit Appeal, which faces credible obstacles, including witness credibility and document availability and authenticity. Accordingly, the third *Martin* factor provides no basis to disturb the Settlement Order.

### 3. The Paramount Interest of the Creditors

The benefits of the settlement to the Debtor's estate and creditors include a $619,000 reduction to the largest claims and avoids the inevitable delay in administering the bankruptcy

case. (*See* Settlement Motion ¶¶ 3-28; 9/20/23 Hr'g Tr. at 99:15-105:23.) The settlement also provides finality to a litigation process that has been ongoing in the Florida District Court and the Eleventh Circuit since September 2018 and avoids the estate incurring an additional $500,000 to $1 million in additional administrative expenses. (*See* Settlement Motion ¶¶ 3-28; 9/20/23 Hr'g Tr. 99:15-105:23.) These are significant, demonstrable benefits to the bankruptcy estate and creditors.

Appellants attempt to create a new standard that would consider not only the paramount interests of the estate and creditors, but also those of litigation defendants. (*See* D.I. 12 at 36.) "Where, as here, the Debtor's owners have a substantial stake in the outcome of this bankruptcy case, consideration of the owners' interests 'appears to be consistent with the purpose of the *Martin* test – to maximize the recovery of those to whom the [debtor] has obligations.'" (*Id.* (quoting *In re RFE Indus.*, 283 F.3d at 165).) The Court agrees that Appellants' position has no basis in law or fact. [5]

Moreover, Appellants offer only speculation about the alleged potential harms to them. Appellants' concern about being "perceived to have entered into such an agreement" with the Judgment Creditors (D.I. 12 at 38) is contradicted by their own statements in their appeal brief in the Eleventh Circuit Appeal in which they state that they revised the agreement with the Judgment Creditors to avoid that very issue. The settlement plainly does not concede any of the arguments that Appellants claim to be concerned about; rather, the settlement recognizes the reality of the state of the litigation that the Trustee inherited from Appellants when the Debtor's

---

[5] As previously noted, the *In re RFE Industries* decision addressed a chapter 11 debtor's standing to object to a settlement in a case where the debtor's creditors had already been paid "in full." *In re RFE Indus., Inc.*, 283 F.3d at 162. That case did not address whether equity holders' interests are relevant to the settlement approval analysis where, as here, they are litigation defendants and millions of dollars of creditor claims remain unpaid.

bankruptcy case was converted for cause to chapter 7 liquidation. (*See* Settlement Motion ¶¶ 3-28; Hr'g Tr. 99:15-105:23.)

The Court finds no error in the Bankruptcy Court's conclusion that the settlement is fair, reasonable, and in the interests of the estate and creditors. The Bankruptcy Court correctly concluded that none of the arguments raised in the Eleventh Circuit Appeal is likely to succeed; that the settlement avoids significant costs, risks and delays of pursuing the Eleventh Circuit Appeal; and that the settlement represents a meaningful reduction to the Judgment Creditors' claims against the Debtor's estate. Appellants have failed to demonstrate that the settlement somehow falls below "the lowest point in the range of reasonableness." *Aetna Casualty & Surety*, 258 B.R. at 123.

## IV.   **CONCLUSION**

For the reasons set forth herein, the Settlement Order will be affirmed. An appropriate order follows.